57 N.J. Super. 515 (1959)
155 A.2d 111
LORETTA MATTHEWS, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF DONALD MATTHEWS, DECEASED, PLAINTIFF-RESPONDENT,
v.
EDNA NELSON AND DAVID NELSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1959.
Decided October 29, 1959.
*516 Before Judges PRICE, SULLIVAN and FOLEY.
*517 Mr. Robert A. Lederer argued the cause for respondent.
Mr. John J. Gaffey argued the cause for appellants (Messrs. Gaffey & Webb, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendants appeal a judgment for $15,000 in favor of plaintiff. The suit, a death action, arose out of an intersection automobile collision. After trial the jury returned a special verdict that defendant David Nelson, the driver of one of the cars, was negligent and his negligence was a proximate cause of the accident. The jury also found that plaintiff's decedent, Donald Matthews, the driver of the other car, was not guilty of contributory negligence and awarded plaintiff as administratrix ad prosequendum the sum of $15,000.
The appeal rests on three main points. First, that the trial court should have granted defendants' motions for dismissal at the close of plaintiff's case, and again after both sides had completed the presentation of evidence. Second, that the verdict should be set aside as against the weight of the evidence and that it is the result of mistake, partiality, prejudice or passion. This ground was a basis of a motion for a new trial. Third, that certain statements made by plaintiff's counsel in his opening to the jury and also in his summation were prejudicial and that the court should have granted defendants' motions for a mistrial.
The first and second points can be considered jointly since they rest on the proposition that the evidence at the close of plaintiff's case and at the close of the entire case demonstrates that plaintiff's decedent Donald Matthews was contributorily negligent as a matter of law and that the jury could not have properly found otherwise. We do not agree. The collision took place at about 1:15 in the afternoon at the intersection of State routes 528 and 547 in Jackson Township, Ocean County. The pavement was dry. Plaintiff's decedent Matthews was driving north on Route *518 547. He had a passenger sitting next to him in the front seat. The defendant David Nelson was driving east on Route 528. His mother and co-defendant was sitting next to him. At the intersection of the two highways is an overhead warning light which blinks red for traffic on Route 547 and amber for traffic on Route 528. In addition, Route 547 at the intersection is a stop street marked by a stop sign and a white line about 20 feet back from the corner. The evidence was that Matthews arrived at the intersection first, stopped his car at the white line for about 20 seconds and then proceeded slowly into the intersection intending to cross over. He was about half way across when he was struck on the left side by defendants' car. A witness described the crash as "a terrific sound"; the car driven by Matthews appeared "to be turning and twisting"; Matthews' body was "propelled through the air" and landed about 40 feet away. Another witness used these words, "I saw a car tumbling over, also saw a man's body going through the air." There was testimony that the Matthews car came to rest on its side 35 feet away from the point of impact. The Nelson car came to rest against a tree about the same distance away. All of this proof must be considered in the light of the evidence that the Matthews car was proceeding at 5 to 8 miles per hour at the time. The defendants' automobile therefore must have been traveling at a high rate of speed to cause the results just described. Indeed, one of the witnesses estimated that the Nelson car was traveling at 55 to 60 miles per hour. The argument made by defendants is that Matthews either did not look to his left or else made an ineffective observation since the defendants' automobile was approaching from that direction. That is not necessarily so, however. No one knows whether or not Matthews looked to his left. He certainly had a right to assume that vehicles on Route 528 were being operated at a reasonable speed and with due regard to the amber caution light which marked the intersection. German v. Harris, 106 N.J.L. 521 (E. & A. 1929). The passenger in the Matthews car looked *519 to his left when Matthews came to a stop and saw nothing coming from that direction. It was not until Matthews had started up again and the car was at or into the intersection that this witness saw the defendants' car for the first time. Under these circumstances it was for the jury to say whether or not Matthews was contributorily negligent.
The other point made by defendants, supported by timely motions for mistrial, is that plaintiff's counsel in his opening to the jury "suggested to the Court  to the jury the figure of the award" contrary to Botta v. Brunner, 26 N.J. 82 (1958), and also "that counsel for Mrs. Matthews in his summation has stated the amount of a verdict  stated the amount of his computations and has expressed to the jury the sum of $28,000," contrary to Botta, supra. On this appeal defendants have broadened their objections to include the contention that counsel for plaintiff, in his argument to the jury, used figures on loss of income that were not supported by the evidence.
Basically, the defendants contend that it was error for plaintiff's counsel to urge upon the jury the proposition that plaintiff's damages could be computed according to a mathematical formula and his use of actual figures suggested to the jury the amount of the verdict to be returned. In substance, counsel took the age of plaintiff's decedent at the time of his death and by use of the mortality tables, which are part of our court rules, calculated the value of a dollar of yearly income over the period of life expectancy. According to the tables such value was $9.90. Counsel then took the amount of yearly income claimed to have been lost by plaintiff as a result of her husband's death and multiplied it by figures taken from the tables. For example, counsel in his summation told this to the jury:
"Mrs. Matthews said, and that is her testimony in this case, that her husband gave her $55 a week, or thereabouts. Now, I compute that $55 a week is $2,860 a year; it is a mere matter of mathematics. $2,860 per year. So as I view it, if one were to create a fund presently today for that yearly amount which her husband gave to *520 her during his lifetime, $2,860, it would take that amount times $9.90, which mathematically speaking is $28,314, as I compute it."
The objection, therefore, is two-pronged. Did counsel have the right to mention a mathematical formula and figures at all, and if so, did he distort the actual figure on loss of income to a point where it constituted prejudicial error?
A review of counsel's opening and summation does not disclose any impropriety in his reference to a formula and figures. All he did was explain to the jury how the actuarial tables worked and how a self-depleting fund, adequate to produce a stated income over a specified period of time, could be calculated. An actuary could have testified to the method of computing such a fund, and in answer to a hypothetical question could have made an actual calculation for the jury.
In a death action under our statute N.J.S.A. 2A:31-1 et seq., the sum recoverable is the present value of the pecuniary injury to the next of kin. The use of a mathematical formula in computing the pecuniary injury has been sanctioned by our courts on numerous occasions. McManus v. New Jersey Water Co., 22 N.J. Super. 253 (App. Div. 1952); McStay v. Przychocki, 10 N.J. Super. 455 (App. Div. 1950), affirmed 7 N.J. 456 (1951); Brown v. Erie Railroad Co., 87 N.J.L. 487 (E. & A. 1915); Hackney v. Delaware & Atlantic Tel. & Tel. Co., 69 N.J.L. 335 (E. & A. 1903). Use of the annuity and mortality tables to calculate the present value of the pecuniary loss is permissible. Capone v. Norton, 21 N.J. Super. 6 (App. Div. 1952). Concededly the tables are not conclusive and their application and use depends on the particular case and the underlying facts and circumstances. The court adequately charged the jury on this point.
Botta v. Brunner, 26 N.J. 82 (1958), relied on by defendants, is not to the contrary. There, the court criticized counsel's argument to the jury that damages for pain and suffering could be calculated at so much an hour or day. As the court therein stated at page 95, "* * * pain and suffering have no known dimensions, mathematical or financial." *521 The rule in Botta, however, has no application to a death action under the statute for the reason that the measure of damages in such case, the pecuniary loss to the next of kin, is susceptible of some mathematical computation.
The final point made by defendants is that even granting counsel's right to argue use of a formula and figures to a jury, in this case counsel had misstated and misused the actual figures testified to, thereby misleading the jury and prejudicing defendants' case.
It is to be noted that no objection on this score was made to the trial judge, so that, in the absence of plain error affecting substantial rights, defendants have no standing to raise this matter on appeal. R.R. 1:5-3(c), R.R. 4:47. Slovak Catholic Sokol v. Foti, 13 N.J. Super. 458 (App. Div. 1951).
The situation arose out of plaintiff's testimony that her husband gave her $55 weekly out of his salary. She also said that this money was used for their joint household and other expenses. Counsel for plaintiff in his argument to the jury, in showing how a capital fund representing loss of income is computed, used the $55 figure as plaintiff's actual loss of income.
Counsel in his summation to a jury should not misstate the evidence nor distort the factual picture. A study of counsel's argument however satisfies us that the jury was not misled since counsel indicated to the jury that he was using the figures for demonstration purposes and that the jury should determine itself what the actual figures were. Counsel's reference to the $55 figure as a basis for computing a capital fund is set forth supra. Immediately following the above quote he added:
"And by the same token, if you feel it wasn't $55 a week, it was $50 a week, it would take whatever that yearly salary would be of $50 a week, $2,500 a year or thereabouts, times $9.90. So whatever you feel he contributed to her. Now, this is only a basis to give you some idea of damage in this matter." *522 Counsel then closed his summation on this point with this language:
"Now we are going to ask you ladies and gentlemen of the jury, as I have indicated before, for a verdict for Mrs. Matthews for whatever annual income you think she has been deprived of, on the basis of $9.90 on the basis of each one of those dollars, or whatever figure you feel honestly and within reason would compensate her for her loss."
The court in charging the jury specifically told it that the $55 figure must be considered in light of the testimony that it was used for household expenses which were for the benefit of both plaintiff and her husband. The verdict of $15,000 indicates plainly that the jury did not adopt the figures used by counsel in his argument. Under the circumstances, we find no error, plain or otherwise.
Affirm.