175 A.3d 953

DOREEN HAYES, PLAINTIFF-APPELLANT, v. BARBARA
DELAMOTTE, DEFENDANT-RESPONDENT, AND GEICO
INSURANCE COMPANY [1], DEFENDANT.

A-4 September Term 2016
077819

Argued September 12, 2017—Decided January 10, 2018

---

[1] Plaintiff's original complaint included GEICO Insurance Company, but the party's name was subsequently amended to GEICO Insurance Group.

374

376

Kimberly L. Gozsa argued the cause for appellant (Levinson Axelrod, attorneys; Kimberly L. Gozsa, on the brief).

Stephen A. Rudolph argued the cause for respondent (Rudolph & Kayal, attorneys; Stephen A. Rudolph, on the brief).

Donald A. Caminiti argued the cause for amicus curiae New Jersey Association for Justice (Breslin & Breslin, attorneys; Donald A. Caminiti and Jessica E. Choper, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Following an automobile accident, plaintiff Doreen Hayes filed a complaint against Barbara Delamotte and the GEICO Insurance Company (collectively, defendants) seeking damages for personal injuries. At the first jury trial, defendants presented, by video-taped deposition, the expert testimony of an orthopedic surgeon

who had examined plaintiff. Defendants' expert compared what he described as two different Magnetic Resonance Images (MRIs) of plaintiff's cervical spine, one that he identified as a pre-accident image taken in 2007 and one that he identified as an image taken after the 2008 accident. The doctor also testified, over plaintiff's objection, to the opinions contained in reports of non-testifying physicians.

Although the doctor identified the MRIs he referenced as pre- and post-accident images, the MRIs, which were labeled, bore the same post-accident "Exam Date." The parties did not address the MRI labeling issue at the time of the deposition or during trial. Plaintiff's counsel, however, sought to replay a portion of the videotaped deposition during summation to show that both MRIs bore labels reflecting the same post-accident date. Defense counsel objected. The trial court denied plaintiff's request, reasoning that expert testimony would be necessary to establish that the MRIs in the video were in fact the same.

The trial resulted in a judgment in favor of defendants. Plaintiff moved for a new trial, which was granted by the trial court on the ground that plaintiff "did not receive substantial justice" because "the jury gave greater weight" to the testimony of defendants' expert than to that of plaintiff's expert.

During the second trial, the defense expert testified again via a video deposition taken for use at the second trial. The second trial ended in a jury verdict in favor of plaintiff. Defendant appealed, and the Appellate Division reversed. The appellate panel concluded that the trial court improperly granted plaintiff's motion for a new trial and reinstated the jury's finding from the first trial in favor of defendants.

We now reverse the judgment of the Appellate Division and reinstate the jury's verdict in favor of plaintiff following the second trial. Because the trial court's error in preventing plaintiff from replaying a portion of the deposition during summation at the first trial resulted in a miscarriage of justice, the trial court properly granted plaintiff's motion for a new trial.

## I.

## A.

We derive the facts pertinent to this appeal from the record of the first trial.

In 2001, prior to the accident and injury at issue, plaintiff was diagnosed with a syrinx, or fluid-filled hole, in her thoracic spine, which caused back, chest, neck, arm, and leg pain. MRIs were taken to monitor the syrinx's growth every six to nine months. That same year, plaintiff suffered a neck injury in an accident, and ultimately underwent surgery for a cervical fusion at her C4–5 and C5–6 vertebrae in 2002. Following that surgery, plaintiff received physical therapy but no other continued treatment. Plaintiff's last MRI, prior to the accident at issue in this case, was taken in May 2007.

In 2008, plaintiff was a front-seat passenger in a vehicle operated by her mother, defendant Barbara Delamotte. The vehicle left the roadway and collided with trees and a telephone pole, allegedly to avoid a collision with an unidentified vehicle. Emergency personnel extracted plaintiff and her mother from their car using the "jaws of life" and transported them to the hospital, where they were treated and released.

After the 2008 accident, plaintiff's family physician provided treatment and ordered a cervical MRI. Because plaintiff's condition did not improve, she consulted a pain management specialist, an orthopedic surgeon, and a neurosurgeon. The neurosurgeon, Dr. Robert Sabo, examined plaintiff, ordered another MRI, and ultimately performed spinal fusion surgery on plaintiff's C6–7 and C7–T1 vertebrae.

## B.

Plaintiff filed a complaint claiming that her mother and the unidentified vehicle caused the 2008 accident. Plaintiff alleged that she sustained permanent injuries in that accident, and her com-

plaint named Delamotte and plaintiff's own insurance carrier, GEICO Insurance Company, with whom plaintiff had uninsured motorist coverage, as defendants, along with "John Doe" defendants connected with the unknown vehicle. Before trial, defendants retained Dr. Arthur Vasen, an orthopedic surgeon, to examine plaintiff and review her medical records, including cervical MRIs taken before and after the 2008 accident. Defendants took Dr. Vasen's videotaped deposition for use at trial rather than call him to give in-court testimony. At trial, plaintiff moved in limine to have portions of Dr. Vasen's deposition referring to reports of non-testifying doctors stricken from the video, arguing that those reports presented opinions on complex medical issues and that plaintiff's counsel was unable to cross-examine those experts. The trial court denied the motion.

At trial, defendants presented Dr. Vasen's videotaped deposition. Prior to playing Dr. Vasen's testimony, the trial court gave the jury a limiting instruction regarding the use of non-testifying experts' opinions. The trial court explained, "I instruct you as the jury in this case you are not to consider any such out of Court statements by any non-testifying experts as substantive proof of the content of those statements." [2] Dr. Vasen testified that there were no differences between the MRIs purportedly taken on May 4, 2007 (before the accident) and May 17, 2008 (after the accident). However, the films that Dr. Vasen showed in the tape were both labeled May 17, 2008. The parties did not address that issue at Dr. Vasen's deposition or before the close of evidence at trial.

At the conclusion of the parties' evidence, plaintiff's counsel requested the opportunity to replay Dr. Vasen's testimony during summation, and comment on the testimony, to demonstrate to the jury that the doctor compared MRI films marked with the same

---

[2] On direct examination, plaintiff's expert, Dr. Sabo, discussed the treatment plaintiff received while under the care of other doctors. Dr. Sabo was also asked about the findings of other non-testifying doctors during cross-examination. The court gave the same instruction before the testimony of Dr. Sabo.

date.[3] Defendant objected to the request. After conducting a N.J.R.E. 104(a) hearing and reviewing Dr. Vasen's videotaped deposition outside the presence of the jury, the trial court upheld defendant's objection to plaintiff's showing and commenting on a part of the doctor's testimony during summation. The judge reasoned that there was no expert testimony from Dr. Vasen, Dr. Sabo, or the radiologist who took the MRIs to differentiate between the films or to evaluate their potential mislabeling.

## C.

Prior to the parties' closings, the trial court found that defendants' negligence caused the accident as a matter of law. Based on that finding, the court explained that the jury would have to assess the percentage of fault attributable to plaintiff's mother and the unknown vehicle and to determine whether plaintiff sustained a permanent injury proximately caused by the 2008 accident. In its charge to the jury, the trial court provided an additional limiting instruction as to the reports of non-testifying experts that mirrored its earlier instruction. Ultimately, the jury determined that plaintiff's mother was solely responsible for the 2008 accident but found that plaintiff did not sustain a permanent injury proximately caused by that accident. Therefore, judgment was entered in favor of defendants.

Plaintiff moved for a new trial, arguing that it was reversible error for the court to bar counsel from showing a part of Dr. Vasen's videotaped testimony or commenting on Dr. Vasen's comparison of the MRI films during summation. In assessing plaintiff's argument, the trial court found that its decision to bar the video replay was legally correct. The court reasoned that replaying the testimony would have been prejudicial. Despite those findings, the court granted plaintiff's motion for a new trial,

---

[3] During arguments on the objection, defense counsel noted that, in addition to the issue with the dates, the MRIs were labeled "lumbar views" when they were, in fact, "cervical films."

concluding that plaintiff "did not receive substantial justice" because "the jury gave greater weight to Dr. Vasen's testimony than to Dr. Sabo."

Thereafter, a second trial was conducted. Because the first trial resulted in a determination that plaintiff's mother (hereinafter "defendant") was solely responsible for the accident, the second trial concerned only the issue of whether plaintiff sustained a permanent injury as a result of the 2008 accident. Dr. Vasen's videotaped deposition was retaken for use at the second trial. Although Dr. Vasen resolved the issues as to the dates of the MRIs he reviewed, plaintiff once again moved in limine to bar Dr. Vasen's testimony about the findings of non-testifying doctors. This time, the court granted plaintiff's motion in limine, citing Agha v. Feiner, 198 N.J. 50, 965 A.2d 141 (2009), on the ground that the opinions of the non-testifying experts were being used improperly to validate Dr. Vasen's opinions. After the second trial, the jury found that plaintiff sustained a permanent injury proximately caused by the 2008 accident and awarded her $250,000 in damages.

Defendant appealed. The Appellate Division found that the trial court improperly granted a new trial and reinstated the jury's verdict in favor of defendant from the first trial.

The appellate panel noted that "there was no credible evidence or expert testimony in the record that the MRI films were incorrectly used," and determined that the trial court "aptly held that an expert would have been required to testify that [Dr.] Vasen was reviewing the same MRI films or that there was a mislabeling in order to challenge his credibility." The panel agreed with the trial court that the decision to bar the video replay was legally correct, because it would have been prejudicial to allow the testimony to be replayed. The appellate panel determined that, arguably, the video replay would have given rise to unfair surprise.

The Appellate Division also held that the trial court usurped the jury's function as factfinder when it found that the "jury gave

greater weight to Dr. Vasen's testimony than to Dr. Sabo." As a result, the panel held there was no ruling in the first trial that prejudiced either party, reversed the trial court's grant of a new trial, and reinstated the jury's verdict in favor of defendants. This Court granted plaintiff's petition for certification. 227 N.J. 376, 151 A.3d 977 (2016). We granted leave to appear as amicus curiae to the New Jersey Association for Justice (NJAJ).

## II.

### A.

Plaintiff claims that the Appellate Division erred in reversing the trial court's order granting a new trial and in reinstating the jury's verdict in favor of defendant.

Plaintiff asserts that an attorney may comment in summation on any evidence admitted at trial. Relying on Condella v. Cumberland Farms, Inc., 298 N.J. Super. 531, 535–36, 689 A.2d 872 (Law Div. 1996), plaintiff argues that attorneys can replay videotaped testimony during summation because it is actual testimony admitted at trial.

Plaintiff also argues that, at the first trial, defendant improperly elicited medical opinions of non-testifying doctors that were consistent with those of defendants' expert, Dr. Vasen. Thus, plaintiff asserts, the panel's ruling conflicts with James v. Ruiz, 440 N.J. Super. 45, 51, 111 A.3d 123 (App. Div. 2015), in which the Appellate Division held that counsel should not ask a question for the purpose of having the jury consider absent experts' hearsay opinions about complex and disputed matters.

The NJAJ, aligned with plaintiff, first argues that the video replay did not "constitute the introduction of new evidence" and as such counsel should have been permitted to play Dr. Vasen's testimony without additional "expert testimony to address any inconsistencies in the evidence presented." Second, the NJAJ asserts that the trial court properly precluded the admission of non-testifying experts' hearsay opinions in the second trial, pursu-

ant to James, 440 N.J. Super at 51, 111 A.3d 123. In raising its first argument, the NJAJ emphasizes that Dr. Vasen's video testimony was introduced by the defense and could thus be properly replayed during summation by plaintiff. In addition, the NJAJ notes that plaintiff "was not obligated to alter or cure any deficiencies in the testimony of defendant's medical expert." In the alternative, the NJAJ posits that if counsel were required to have expert testimony to note the inconsistencies with the MRIs, Dr. Vasen's testimony should have been stricken in its entirety.

## B.

Defendant points out that the trial court first indicated that it did not know what swayed the jury but then, in granting a new trial, held that "it is clear that the jury gave greater weight to Dr. Vasen's testimony than to Dr. Sabo." Defendant agrees with the appellate panel that Dr. Vasen's testimony "was not the exclusive means by which the jury could have reached its verdict" and that the verdict could have been based on a number of considerations, including the jury's rejection of Dr. Sabo's testimony or plaintiff's testimony.

Finally, defendant highlights the panel's agreement that the trial judge's "decision to bar the video replay was legally correct because 'a video replay during summation would have been prejudicial given the lack of testimony by any medical expert or radiologist who could have explained the discrepancy in the films displayed by [Dr.] Vasen during his testimony.'"

## III.

## A.

"A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest

denial of justice.' " <u>Risko v. Thompson Muller Auto. Grp., Inc.</u>, 206 N.J. 506, 521, 20 A.3d 1123 (2011) (quoting <u>Baxter v. Fairmont Food Co.</u>, 74 N.J. 588, 597–98, 379 A.2d 225 (1977)). A trial court therefore grants a motion for a new trial only "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." <u>Crawn v. Campo</u>, 136 N.J. 494, 511–12, 643 A.2d 600 (1994) (quoting <u>R.</u> 4:49–1(a)).

■ "The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." <u>Risko</u>, 206 N.J. at 522, 20 A.3d 1123; <u>accord R.</u> 2:10–1 ("The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law."). We have explained that a "miscarriage of justice" can arise when there is a "manifest lack of inherently credible evidence to support the finding," when there has been an "obvious overlooking or under-valuation of crucial evidence," or when the case culminates in "a clearly unjust result." <u>Risko</u>, 206 N.J. at 521–22, 20 A.3d 1123 (quoting <u>Lindenmuth v. Holden</u>, 296 N.J. Super. 42, 48, 685 A.2d 1351 (App. Div. 1996)).

Here, the trial court found that it had properly barred plaintiff's counsel from replaying the video because the request to replay the video "was not based on any evidential foundation established in the trial record" and because "the showing would be highly prejudicial to the defendants." The court found, nevertheless, "that if a new trial is not granted on at least the damages aspect of the case, the plaintiff herself would likely suffer an injustice" given that "the jury gave greater weight to Dr. Vasen's testimony than to Dr. Sabo['s testimony]."

■ We have noted that, when evaluating the decision to grant or deny a new trial, "an appellate court must give 'due deference' to the trial court's 'feel of the case.' " <u>Id.</u> at 522, 20 A.3d 1123 (quoting <u>Jastram v. Kruse</u>, 197 N.J. 216, 230, 962 A.2d 503 (2008)). That is not to say, however, that we must accept the trial

court's legal reasoning: "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). We also note that "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Do–Wop Corp. v. City of Rahway, 168 N.J. 191, 199, 773 A.2d 706 (2001) (collecting cases). A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning. Isko v. Planning Bd., 51 N.J. 162, 175, 238 A.2d 457 (1968); see also Macfadden v. Macfadden, 49 N.J. Super. 356, 359, 139 A.2d 774 (App. Div. 1958) ("The written conclusions or opinion of a court do not have the effect of a judgment. From them no appeal will lie. 'It is only what a court adjudicates, not what it says in an opinion, that has any direct legal effect.'" (quoting Suburban Dep't Stores v. City of East Orange, 47 N.J. Super. 472, 479, 136 A.2d 280 (App. Div. 1957))).

### B.

With those principles in mind, we turn to the evidentiary determination that plaintiff claims created an injustice and supports the trial court's grant of a new trial: the decision to bar her from replaying and commenting on Dr. Vasen's deposition during summation.

### 1.

"[C]ounsel is allowed broad latitude in summation." Colucci v. Oppenheim, 326 N.J. Super. 166, 177, 740 A.2d 1101 (App. Div. 1999). That latitude is not without its limits, and "counsel's comments must be confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial." Ibid.; accord State v. Bogen, 13 N.J. 137, 140, 98 A.2d 295 (1953). Further, counsel "should not misstate the evidence nor distort the factual picture." Colucci, 326 N.J. Super. at 177, 740

A.2d 1101 (quoting Matthews v. Nelson, 57 N.J. Super. 515, 521, 155 A.2d 111 (App. Div. 1959)). Within those limits, however, "[c]ounsel may argue from the evidence any conclusion which a jury is free to reach." Ibid. "Indeed, counsel may draw conclusions even if the inferences that the jury is asked to make are improbable...." Ibid.

 In Condella, the trial court found that "it is within the trial court's discretion to allow counsel to show portions of the videotaped trial testimony and make comment thereon during summation." 298 N.J. Super. at 535, 689 A.2d 872. We agree with that holding but note that the exercise of such discretion depends upon whether counsel's comments are "confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial." Colucci, 326 N.J. Super. at 177, 740 A.2d 1101; accord Bogen, 13 N.J. at 140, 98 A.2d 295.

 We also agree that the following safeguards suggested in Condella should be considered when portions of videotaped trial testimony are utilized during summation. First, the replay during summation "should not be so lengthy as to constitute a second trial emphasizing only one litigant's side of the case." Condella, 298 N.J. Super. at 536, 689 A.2d 872. Second, "to guard against the edited portions of the videotape misstating the evidence" and to prevent them from being "presented out of context," the proponent should raise the issue with the court before playing an edited part of the tape. Ibid.; see N.J.R.E. 104(a).[4] Those safeguards ensure that one party's side of the case is not "unduly emphasize[d]" over the other, Condella, 298 N.J. Super. at 536, 689 A.2d

---

[4] In Condella, the plaintiff requested permission to replay a portion of the defense expert's testimony as well as defense counsel's opening. 298 N.J. Super. at 533, 689 A.2d 872. The video at issue in Condella was taken via cameras in the courtroom. Ibid. The court granted the plaintiff's request to replay the trial testimony, but denied the plaintiff's request as to the defense's opening statement. Here, Dr. Vasen's testimony was recorded and presented as testimony at trial. We discern no difference between the request made in Condella related to trial testimony and the request in this case.

872, and that any edited portions "are a fair and accurate representation of the witness' testimony," id. at 537, 689 A.2d 872.

Here, plaintiff requested to have brief portions of Dr. Vasen's testimony replayed to demonstrate that the MRIs compared by the expert bore the same date. Use of those portions would not have constituted a "second trial" overemphasizing plaintiff's case. The proposed use of the video would not have been an attempt to misuse Dr. Vasen's testimony, but merely a legitimate attempt to emphasize a certain aspect of his testimony, namely, the dates on the MRIs to which he pointed in the video. Lastly, the trial court conducted a Rule 104 hearing and reviewed the video. In its opinion granting plaintiff's motion for a new trial, the trial court found that the proposed video replay "was not overly lengthy" but because "the plaintiff's application . . . was not based on any evidential foundation established in the trial record," the replay "would misstate the evidence and mislead the jury." However, the trial court did not make a finding and defendant did not claim that the video had been edited or that Dr. Vasen's testimony was taken out of context. The portion of the videotaped deposition sought to be played thus met the requirements of Condella, which we now adopt as modified.

We further find that Dr. Vasen's videotaped deposition was in evidence once it was played at trial. As with any other piece of evidence adduced at trial, counsel was permitted to fairly comment upon it and play portions during closing argument. See Condella, 298 N.J. Super. at 535, 689 A.2d 872; see also State v. Muhammad, 359 N.J. Super. 361, 372–73, 820 A.2d 70 (App. Div. 2003) (concluding it was proper for a prosecutor to replay video testimony during summation in criminal matters). Counsel was free to argue the import of the dates on the MRIs and to draw conclusions from those dates, so long as those conclusions were grounded in the evidence. See Colucci, 326 N.J. Super. at 177, 740 A.2d 1101.

We disagree with the determination "that an expert would have been required to testify that [Dr.] Vasen was reviewing the

same MRI films or that there was a mislabeling in order to challenge his credibility." Under this State's jurisprudence, expert testimony "concern[s] a subject matter that is beyond the ken of the average juror." State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984). Merely pointing to dates on MRIs or other images does not require expert testimony because reading the dates and realizing that they are the same is not beyond the "ken of the average juror."

In sum, we hold that counsel may refer to, read, or play portions of videotaped fact or expert testimony given at trial during closing, as long as (1) "counsel's comments [are] confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial," Colucci, 326 N.J. Super. at 177, 740 A.2d 1101, and (2) the concerns set forth in Condella are met. It was, in short, error to preclude the video replay during the first trial.

We next consider whether that error produced a miscarriage of justice, warranting a new trial.

## 2.

During both trials, the dispositive issue was whether plaintiff sustained a permanent injury proximately caused by the 2008 accident. That issue was fleshed out for the jury by the testimony of plaintiff, plaintiff's husband, and the parties' expert witnesses. The parties' experts came to opposite conclusions regarding the 2008 accident's impact on plaintiff's spine. Their testimony was key to the outcome of the first trial and the jury's determination as to whether plaintiff sustained a permanent injury. We have concluded that the trial court abused its discretion by not allowing plaintiff to point out what was plainly visible on the videotaped testimony of Dr. Vasen played at trial—that the MRIs examined and compared by Dr. Vasen bore the same date. Plaintiff's counsel should have been able to raise that fact and argue that it undermines the reliability of Dr. Vasen's testimony that plaintiff did not suffer a permanent injury in the 2008 accident.

Because expert testimony was vital to the outcome of the trial, the trial court's refusal to allow plaintiff's counsel to replay a portion of Dr. Vasen's deposition was an error that resulted in a "miscarriage of justice under the law," warranting a new trial. R. 2:10–1.

Defendant claims "it is unfair and inequitable for [p]laintiff to play any portion of Dr. Vasen's video during summations, as that same opportunity was not available to defendant (to play portions of Dr. Sabo's trial testimony, as he testified live)." However, it was defendant who chose to utilize a videotaped deposition of Dr. Vasen in lieu of in-court testimony. In addition, both defendant and plaintiff were aware of the contents of the video. The fact that plaintiff chose to present Dr. Sabo's testimony live does not make it "unfair" or "inequitable" for plaintiff to utilize Dr. Vasen's videotaped deposition to her advantage during summation. Nor does defense counsel's failure to discover the labeling discrepancy render plaintiff's use of the video during summation "inequitable."

The Appellate Division found that, arguably, the replay would have constituted unfair surprise. Unfair surprise is a proper basis to exclude evidence not properly provided to the opposing party during discovery. See Balian v. Gen. Motors, 121 N.J. Super. 118, 127, 296 A.2d 317 (App. Div. 1972). The prohibition against unfair surprise prevents the introduction of evidence not properly disclosed by the opposing party, id. at 127, 296 A.2d 317, but does not prevent counsel from using to their strategic advantage the evidence properly presented at trial by an adversary. A party's use of evidence in its closing argument cannot be an "unfair surprise" to the adverse party that properly produced, introduced, and admitted the same evidence at trial.

Here, plaintiff was entitled to replay the deposition and draw the jury's attention to the discord between the dates stamped on the MRIs to which Dr. Vasen pointed and the dates he ascribed to them. Because the trial turned on the weight assigned to expert testimony, we find that the denial of that opportunity worked an injustice. Thus, although we disagree with the reason for which the trial court granted plaintiff's motion for a new trial, we agree

that a new trial was necessary. We therefore reverse the judgment of the Appellate Division and reinstate the verdict of the second jury.

## IV.

Having resolved that a new trial was properly granted by the trial court, we address only briefly plaintiff's argument that, at the first trial, Dr. Vasen's videotaped testimony regarding the reports of non-testifying experts was inadmissible hearsay.

### A.

"[U]nder N.J.R.E. 703, an expert may give the reasons for his opinion and the sources on which he relies, but that testimony [cannot] establish the substance of the report of a non-testifying [expert]." Agha, 198 N.J. at 64, 965 A.2d 141. In other words, an expert may not "alert[ ] the jury to evidence it would not otherwise be allowed to hear." State v. Burris, 298 N.J. Super. 505, 512, 689 A.2d 860 (App. Div. 1997). That is because "expert testimony [cannot] serve as 'a vehicle for the wholesale [introduction] of otherwise inadmissible evidence.'" Agha, 198 N.J. at 63, 965 A.2d 141 (quoting State v. Vandeweaghe, 351 N.J. Super. 467, 480–81, 799 A.2d 1 (App. Div. 2002) (alteration in original) (internal quotation marks omitted), aff'd, 177 N.J. 229, 827 A.2d 1028 (2003)).

Although a testifying expert may detail the reasons underlying his or her opinion and the sources upon which his or her opinion is based, "[a]n expert witness should not be allowed to relate the opinions of a nontestifying expert merely because those opinions are congruent with the ones he has reached." Krohn v. N.J. Full Ins. Underwriters Ass'n, 316 N.J. Super. 477, 486, 720 A.2d 640 (App. Div. 1998). Said in a different way, the contents of a non-testifying expert's report may not be used as a "tie breaker" between competing experts. James, 440 N.J. Super. at 72, 111 A.3d 123. Even when admitted, therefore, hearsay statements

relied upon by an expert may be used for the limited purpose of apprising the jury of the basis of the testifying expert's opinion, but not for the correctness of the non-testifying expert's conclusion, and the trial court must, upon request, instruct the jury regarding the limited use of the hearsay. Agha, 198 N.J. at 63, 965 A.2d 141.

## B.

■ Here, before the first trial, plaintiff moved in limine to preclude Dr. Vasen from referring to the opinions of non-testifying experts. The trial court denied the motion, admitted the testimony, and gave the following limiting instruction: "I instruct you as the jury in this case you are not to consider any such out of Court statements by any non-testifying experts as substantive proof of the content of those statements."

Over the course of his direct examination, defense counsel asked Dr. Vasen whether a non-testifying doctor "indicate[d] that there was a problem" at a specific part of plaintiff's spine and additionally asked whether doctors noted a "problem at" the location of the purported injury. That testimony impermissibly sought to establish the substance of the reports of non-testifying physicians, see Agha, 198 N.J. at 64, 965 A.2d 141, and "alert[ed] the jury to evidence it would not otherwise be permitted to hear," Burris, 298 N.J. Super. at 512, 689 A.2d 860. Notwithstanding the cautionary instruction given, the trial court erred in permitting Dr. Vasen to bolster his testimony using "congruent" opinions in reports of non-testifying doctors during the first trial rather than simply explain the sources of information used in formulating his opinion.

## V.

For the reasons set forth above, we reverse the judgment of the Appellate Division and reinstate the jury's verdict in favor of plaintiff following the second trial.