**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4127-23

A-Z VENUE MANAGEMENT, LLC
and ZACHARY LUBCHANSKY,

     Plaintiffs-Appellants,

v.

JAMES V. VERNOR and
JEAN P. VERNOR,

     Defendants-Respondents.

_____

        Argued September 15, 2025 – Decided October 20, 2025

        Before Judges Natali, Walcott-Henderson and Bergman.

        On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0045-21.

        Daniel Posternock argued the cause for appellants (Posternock Apell, PC, attorneys; Colton Karpus and Daniel Posternock, on the briefs).

        Robert L. Grundlock, Jr., argued the cause for respondents (Rubin, Ehrlich Buckley & Przekop, PC, attorneys; Robert L. Grundlock, Jr., on the brief).

PER CURIAM

In this breach of contract dispute, plaintiffs A-Z Venue Management, LLC ("A-Z Venue") and Zachary Lubchansky ("Lubchansky"), A-Z Venue's owner and operator, appeal from a July 19, 2024 order denying their motion for a new limited trial as to damages, following a jury verdict in their favor, and against defendants James V. Vernor and Jean P. Vernor. Plaintiffs argue the jury incorrectly offset its damages by the amount defendants had claimed Lubchansky owed in unpaid rent. Perceiving no error in the court's denial of the motion for a new trial, we affirm.

We limit our recitation of the underlying facts to those relevant to our determination of the sole issue before us. Lubchansky operated A-Z Venue, an event business, on property owned by defendants at 16 Mill Road, Lambertville ("the property"), pursuant to a lease executed on April 25, 2015. Under the 2015 lease, Lubchansky, not A-Z Venue, is the named tenant and James Vernor is the landlord. The lease included a start date of May 1, 2015, and an end date of September 30, 2016, "unless extended in writing."[1]

---

[1] Contemporaneous with the signing of the 2015 lease, the parties also executed two additional agreements: a single-page "Agreement for Sale of Business," and an "Agreement of Sale for Furnishings."

A-4127-23

In October 2016, Lubchansky ceased paying rent under the 2015 lease. He, however, continued to operate A-Z Venue on defendants' property until November 2020.

In 2019, Lubchansky, on behalf of A-Z Venue, and defendants executed a different contract for the sale of the property to A-Z Venue for $1,325,000, which included $327,000 noted in the contract as having been already paid. The contract also provided in pertinent part:

> 7. Time and Place of Closing. [A-Z Venue] and [defendants] agree to make July 31, 2019 the estimated date for the closing. Both parties will fully cooperate so that the closing can take place on or before the estimated date of the closing. . .
>
> . . .
>
> 22. Cancellation of Contract. If this contract is legally and rightfully canceled, [A-Z Venue] can get back the deposit and the parties will be free of liability to each other.

The sale between A-Z Venue and defendants never materialized.

On January 27, 2021, plaintiffs filed a complaint against defendants alleging breach of contract, unjust enrichment, misrepresentation, and damages of $327,000, among other prayers for relief. Plaintiffs asserted defendants cancelled the contract on November 9, 2020 and "refused to return the [$327,000 already paid], thereby breaching the [c]ontract."

3

A-4127-23

Defendants asserted various counterclaims, including breach of lease and breach of agreement of sale, against Lubchansky individually. Defendants also claimed both A-Z Venue and Lubchansky breached the lease in vacating the property, removing fixtures, and failing to pay municipal fees, and that plaintiffs' "conduct caused the loss of a sale of the [p]roperty for $1.2 million."

A trial ensued.[2] At the conclusion of the presentation of the evidence, the jury was asked to address the following questions on the verdict sheet:

> 1: Do you find that the plaintiff AZ Venue Management [sic] has proven by a preponderance of the credible evidence that the defendants Vernors breached their contractual obligations to the plaintiffs A-Z Venue [] and … [] is entitled to a return of any money under the 2019 Contract of Sale for the purchase of 16 Mill Road, West Amwell, NJ?
>
> 2: What is the amount of money if any, which should be returned to A-Z Venue []?
>
> 3: Do you find by a preponderance of evidence that [A-Z Venue] breached the 2019 Contract of Sale, by failing to purchase the Brook Mill farm property?
>
> . . .
>
> 5: Do you find by a preponderance of the evidence that []-Lubchansky breached the 2015 Lease Agreement by failing to pay rent from November 1, 2016, through

---

[2] The record before us does not contain the trial transcripts as required by Rule 2:6-12.

November 30, 2020 for [forty-nine] months at $5,000/month = $245,000?

The jury returned a verdict for A-Z Venue and damages in the amount of $82,000. As to question number one, the jurors answered "yes" in favor of A-Z Venue. As to question number two, the jury awarded "$82,000." The jury answered "no" to questions three and five, finding A-Z Venue had not breached the contract of sale, and Lubchansky, individually had not breached the lease agreement.

Plaintiffs moved for a new trial as to damages, or alternatively for additur, arguing the damages amounted to a miscarriage of justice under Rule 4:49-1(b). Plaintiffs argued that because the jury found no liability against either A-Z Venue or Lubchansky, it must have reduced plaintiffs' demand of $327,000 by $245,000, which is the amount defendants claimed was due in unpaid rent.

The court denied plaintiffs' motion in an oral opinion. In addressing the applicable standard, the court explained the jury's verdict carries a presumption of correctness. The court noted plaintiffs did not object to the verdict form, specifically question two, which asked the jury to consider "what is the amount of money if any, which should be returned to [A-Z Venue]." (emphasis added). The court stated that based on the language in question two, the jurors "could have, even if they answered 'yes' to number one, . . . answered with zero [to

5

question number two] . . . They didn't have to come back with anything . . . as referenced by the 'if any' language." The court searched the testimony, specifically referencing the parties' dispute over who was the tenant under the 2015 lease—A-Z Venue or Lubchansky. The court considered Lubchansky's testimony that he had ceased paying rent for forty-nine months, totaling $245,000.

Reviewing the testimony and documentary evidence presented at trial, the court reasoned that the jury considered what A-Z Venue was entitled to as a result of the failed contract for the sale of the property, which was $327,000. The jury then deducted the amount of rent it concluded plaintiffs owed, and Lubchansky admitted he did not pay—$245,000—in order to arrive at $82,000.

The court explained the jury did not find Lubchansky breached the agreement by failing to pay due rent because he testified it was A-Z Venue that had entered into the lease with defendants, not him individually. The court found nothing untoward about the jury's consideration of the outstanding rent owed to defendants in reducing the award to plaintiffs. The court concluded the jury's verdict did not constitute a miscarriage of justice and was not shocking to the judicial conscience.

This appeal followed.

A-4127-23

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)); See also Twp. of Manalapan v. Gentile, 242 N.J. 295, 304 (2020). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22).

In evaluating the trial court's decision to grant or deny a new trial, "[we] must give 'due deference' to the trial court's 'feel of the case,'" however, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id., 231 N.J. at 386-87 (first quoting Risko, 206 N.J. at 521; and then quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div.

2005). "[A] trial court should not interfere with a jury verdict unless the verdict is clearly against the weight of the evidence." Caldwell v. Haynes, 136 N.J. 422, 432 (1994). To overturn a jury verdict, "[t]he verdict must shock the judicial conscience." Ibid.

"A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Hayes, 231 N.J. at 385-86 (quoting Risko, 206 N.J. at 521). "Our civil system of justice places trust in ordinary men and women of varying experiences and backgrounds, who serve as jurors, to render judgments concerning liability and damages." Johnson v. Scaccetti, 192 N.J. 256, 279 (2007).

Generally, "[a] jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.'" Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). Therefore, a damages award "should not be disturbed unless it clearly and convincingly appears to the judge that the jury's award is plainly wrong, constitutes a manifest injustice, or is so disproportionate to the injury as to shock

the judge's conscience." Anderson v. A.J. Friedman Supply Co., Inc., 416 N.J. Super. 46, 69 (App. Div. 2010) (citing Rendine v. Pantzer, 141 N.J. 292, 312 (1995)). However, "[in] the unusual case where a damages award was grossly excessive or grossly inadequate, the trial court retains the power to declare that a jury's damages award shocks the conscience and to grant a new trial or offer the parties a remittitur or an additur." Orientale v. Jennings, 239 N.J. 569, 593 (2019).

Before us, plaintiffs principally argue that although the jury found in their favor, the award of $82,000, rather than $327,000, constitutes a miscarriage of justice and shows the jury incorrectly accepted defendants' cross-claims and offset damages by the amount equal to defendants' claim of loss rental income. Plaintiffs aver that "reduction of [p]laintiff's damages award is evident in the mathematical calculations . . . which confirms that the jury improperly substituted [p]laintiff Lubchansky with [A-Z Venue]," and in doing so, "the jury purposefully conflated two distinct, legal identities to reach its desired conclusion."

As a preliminary matter, we note that plaintiffs' failure to provide transcripts of the trial proceeding constitutes error under Rule 2:6-12. Nevertheless, we decline to dismiss plaintiffs' appeal on that basis given the

9

limited issue before us, which has been fully briefed by the parties. We similarly reject defendants' contention no final order exists for appellate review given the court's July 19, 2024 order. It is of no moment that the parties failed to agree to the final form of judgment, and thus, we have adjudicated the merits of the appeal.

Turning to plaintiffs' substantive arguments, we reject these arguments and affirm the court's order substantially for the reasons stated in its oral decision. We add the following brief comments to amplify our opinion. First, we are satisfied the court, having heard the evidence, was in the best position to determine whether the jury verdict was "clearly against the weight of the evidence" to constitute a miscarriage of justice. Caldwell, 136 N.J. at 432 (citing Horn v. Vill. Supermarkets, 260 N.J. Super. 165, 178 (App. Div. 1992)).

The court reasoned the jury "didn't have to come back with anything." The court explained that neither the verdict nor resulting damage award shocked the court's conscience and plaintiffs therefore failed to persuade the court there was a clear and convincing miscarriage of justice warranting a new trial. Dutton v. Rando, 458 N.J. Super. 213 (App. Div. 2019).

In Dutton, we reiterated the applicable standard of review for motions for a new trial, with substantial deference given to the trial judge's assessment of

10

the case. 458 N.J. Super. at 224. Appellate intervention is therefore only warranted in cases of clear injustice, and a jury's verdict should not be disturbed unless it is wrong by clear and convincing evidence or is so disproportionate as to shock the judicial conscience. See also Risko, 206 N.J. at 522.

In response to plaintiffs' central argument that the verdict and damages were inconsistent because of the jurors' responses to questions one and five, the court reasoned the jury answered "no" to question five and implicitly concluded that A-Z Venue rather than Lubchansky personally, failed to make the payments. The court concluded the jury had heard Lubchansky's testimony that A-Z Venue, not him individually, was the tenant under the 2015 lease and thus responsible for lease payments. The court reasoned that "if we were to change the word [Lubchansky] and put [A-Z Venue] here that question probably would have been answered differently."

Applying the requisite deferential standard of review, we are satisfied the court's denial of plaintiffs' motion for a new trial as to damages, including additur, is sufficiently supported by the record. We note that other than plaintiffs' self-serving and speculative arguments, plaintiffs have not rebutted the presumption of correctness afforded to jury damage awards. Cuevas, 226 N.J. at 501. We also note that although the jury concluded plaintiffs established

their claims, plaintiffs are not entitled to the precise damages sought in their complaint; such a determination is exclusively within the province of the jury.

The court also properly observed that plaintiffs agreed to the questions on the verdict sheet and based on the testimony and evidence presented at trial, including that Lubchansky had failed to pay rent for several years, the jury could reasonably have factored that evidence into its damages calculation. The court's recitation of the evidence and "feel of the case" is entitled to our deference. Hayes, 231 N.J. at 386 (citing Risko, 206 N.J. at 521-22).

Under these circumstances, the court's rejection of plaintiffs' motion for a new trial as to damages and finding there was an insufficient basis to conclude the jury's award is plainly wrong, constitutes a manifest injustice, or is so disproportionate to the injury as to shock the judge's conscience, is entitled to our deference.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-4127-23