**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4071-18

SUZANNE PAGONIS,

    Plaintiff-Appellant,

v.

BOROUGH OF ALLENDALE,
ALLENDALE TRAVEL
SOFTBALL,

    Defendants-Respondents,

and

ALLENDALE SPORTS
ALLIANCE,

    Defendant.

_____

        Argued January 25, 2021 – Decided March 22, 2021

        Before Judges Messano, Hoffman and Suter.

        On appeal from the Superior Court of New Jersey, Law
        Division, Bergen County, Docket No. L-3636-17.

David J. Novack argued the cause for appellant (Marin Goodman, LLP, attorneys; David J. Novack, on the briefs).

Robert Zimmerer argued the cause for respondents (Zimmerer, Murray, Conyngham & Kunzier, attorneys; Robert Zimmerer, of counsel and on the brief).

PER CURIAM

On July 16, 2016, plaintiff Suzanne Pagonis tripped and fell while walking across a grassy field at the Crestwood Lake Club (the Club), a recreational lake swimming complex owned by defendant Borough of Allendale and encompassed within a municipal park, Crestwood Park. She suffered significant injuries to her leg, knee, and wrist as a result.

Plaintiff's daughter had participated earlier in the day in a softball tournament organized by defendant Allendale Travel Softball (ATS), a non-profit corporation.[1] Plaintiff, her children, and her fiancé, Drew Karpinski, accepted an invitation ATS extended to the tournament participants to use, on a limited basis, some of the Club's facilities. The Club was a for-profit enterprise that charged membership fees, and plaintiff and other tournament families were

---

[1] Plaintiff voluntarily dismissed her complaint against Allendale Sports Alliance, a municipal committee that organizes and regulates the use of athletic fields in Allendale, during the litigation. Additionally, ATS changed its name to Travel Softball, Inc., in 2016, after plaintiff filed her complaint.

advised they could not use the beach and facilities reserved for members that were closest to the main entrance parking lot, which was also reserved for members. Rather, the Club's director advised ATS's tournament director that tournament families must use only the "west beach," roughly across the lake from the members' beach and the Club's concession stand, and access that beach through another entrance, the "Red Barn"[2] entrance, near the north end of the lake.

Plaintiff and Karpinski arrived with the children in two cars. The parking lot near the Red Barn was closed to traffic, and a gate closed off traffic to a gravel road that partially led to the west beach; so, plaintiff and Karpinski parked in a grassy area near the north end of the lake where they saw other cars parked. With her family, plaintiff walked across a grassy field to the west beach. Sometime later, mindful that they were not allowed to access the Club members' facilities, plaintiff and Karpinski retraced their steps around the north end of the lake, walked on a service road used by Allendale's Department of Public Works (DPW) along the east side of the lake, and arrived at the concession stand to purchase some food. Because of the long line at the stand, plaintiff decided to

---

[2] The Red Barn is a structure that is part of Crestwood Park and hosts concerts and other community events.

return to the car, retrieve lunch for her children, and go back to the west beach. As she crossed the grassy field and was approximately three-quarters of the way to the west beach, plaintiff tripped and fell.

Plaintiff filed her complaint alleging that "[b]ecause of the uneven terrain over which [she] . . . was directed and because of the grass," her right foot dropped into a "deep hole [she] could not readily see[,]" causing her fall and resulting injuries. Plaintiff alleged the "deep hole" was a dangerous condition on public property, and defendants negligently failed to maintain, supervise, control, and repair the open fields around the lake. She also alleged that Allendale was responsible for "controlling the parking lots . . . and directing pedestrian traffic" at the Club, and through its agents failed to exercise reasonable care because it directed her to an area without safe access to the west beach and failed to supervise access to the west beach. Plaintiff further claimed that ATS breached its duty of care by "failing to provide safe parking [and] access routes" to those families participating in the tourney.

Following discovery, Allendale and ATS filed a joint motion seeking summary judgment based on the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, and the Landowner's Liability Act (LLA), N.J.S.A. 2A:42A-2 to -10. Plaintiff filed her opposition; in a reply brief, ATS claimed it also was immune from suit

pursuant to the Charitable Immunity Act (CIA), N.J.S.A. 2A:53A-7 to -13, although defendants' joint answer never asserted the statute as an affirmative defense.

The motion judge granted summary judgment to defendants. In a written decision that accompanied his order, the judge analyzed the potential liability of each defendant separately, rejecting defendants' argument that ATS was a public entity entitled to the defenses and immunities of the TCA.[3]

Regarding Allendale, the judge concluded the motion record failed to demonstrate the hole that allegedly caused plaintiff's fall or the lack of a pathway to the west beach were dangerous conditions on public property, or that plaintiff satisfied any of the other predicates for liability pursuant to N.J.S.A. 59:4-2. He also rejected plaintiff's claim that Allendale's employees were negligent in supervising guests' access to the west beach. The judge also determined that Allendale was immune pursuant to N.J.S.A. 59:4-8, which provides, "Neither a public entity nor a public employee is liable for an injury caused by a condition

---

[3] Defendants contended ATS was a public entity for purposes of the TCA because it was a non-profit organization insured under the same insurance policy issued to Allendale, and the Club waived any fee for ATS's use of the west beach, recognizing that ATS was a borough organization.

of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

Although recognizing Allendale had not asserted the LLA as an affirmative defense, the judge noted the borough claimed immunity under the statute in answering plaintiff's interrogatories. Finding no prejudice to plaintiff, the judge also concluded Allendale was immune from liability under the LLA.

Although he did not specifically address plaintiff's argument that ATS waived potential CIA immunity because it never asserted the statute as a defense in its answer, the judge concluded that because ATS was a non-profit organization organized exclusively for educational purposes, and plaintiff was a beneficiary of ATS's charitable endeavors, ATS was immune under the CIA.

I.

On appeal, as to ATS, plaintiff argues we should reverse the grant of summary judgment because ATS waived the affirmative defense of CIA immunity or should be estopped from asserting it, and the judge denied plaintiff due process by considering the argument at all.

Regarding Allendale, plaintiff contends the judge failed to apply proper summary judgment standards to disputed facts in the record, and plaintiff established a prima facie case of negligence based on a dangerous condition on

6

public property and negligence in supervising access to the west beach. Plaintiff further argues that because the Club is not "unimproved property," the judge misapplied the immunity provided by N.J.S.A. 59:4-8. Finally, plaintiff argues Allendale failed to assert the LLA as an affirmative defense in its answer and, moreover, the statute does not apply to the Club and its surrounding property.

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). "'If there is no genuine issue of material fact,' then we must 'decide whether the trial court correctly interpreted the law.'" Richter v. Oakland Bd.

7

of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (quoting DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013)).  We limit our review to the record before the motion judge.  See Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000) (holding appellate review of the grant of summary judgment is limited to the record that existed before the motion judge (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963))).

Additionally, "[w]e review the judge's interpretation of 'the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute.'"  Warren v. Muenzen, 448 N.J. Super. 52, 62 (App. Div. 2016) (second alteration in original) (quoting Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).  "We also note that 'it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion.'"  Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

Having considered plaintiff's arguments in light of the record and applicable legal standards, we affirm.

II.

Generally speaking, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex (Polzo II), 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)).

> [I]n order to impose liability on a public entity pursuant to [N.J.S.A. 59:4-2], a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."
>
> [Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2); accord Polzo v. Cnty. of Essex (Polzo I), 196 N.J. 569, 579 (2008).]

"Th[e]se requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." Polzo I, 196 N.J. at 585.

"The [TCA] defines a 'dangerous condition' as 'a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" Garrison

9

v. Twp. of Middletown, 154 N.J. 282, 286–87 (1998) (quoting N.J.S.A. 59:4-1(a)). When deposed, plaintiff described stepping into a hole that caused her to fall forward on her right knee and wrist. She screamed for help, and a nearby fisherman and dog walker came to her aid, with one holding her head in his hands as she lay on the turf because, he said, "the hole was under [her] head." Plaintiff could not describe the hole.

In his deposition, Karpinski, who did not see the incident, arrived on the scene while plaintiff was still on the ground and a man was holding her head. Karpinski described the "hole" as an "indentation in the ground" possibly made by a "wheel[.]" Some grass had grown in the depression. In a certification filed in opposition to defendants' summary judgment motion, Karpinski clarified that the depression was like a "rut" caused by a vehicle's tire. Plaintiff and Karpinski both testified that they saw the grassy area was "uneven" when they first traversed it.

Allendale Police Officer Vic Bartoloma responded to the scene of plaintiff's fall and tended to her by applying ice packs to her knee and wrist. At his deposition, Officer Bartoloma testified that he looked around the area where plaintiff fell. When asked if he saw "any hole where [plaintiff] might have stepped in and fallen[,]" he responded, "Nothing apparent." Police Officer

Vincent Rizzo, who also responded to the scene, testified at his deposition that he inspected a fifty-foot diameter area around where plaintiff was lying in search of the hole that caused her fall. Officer Rizzo said he saw "[n]othing visible that looked emergent." Sergeant William Kroepke was also one of the responding officers. In his deposition, he stated that when he arrived plaintiff was on the ground, said she had fallen in a hole, and "pointed in a direction." Sergeant Kroepke took some photos of the scene, which are in the record, but do not show anything other than the general area of plaintiff's fall. When asked if he looked for the hole where plaintiff fell, Sergeant Kroepke testified, "We looked around. I didn't see any major hole."

Allendale's Director of Operations, Ron Kistner, was deposed. He said the grassy area was mowed by DPW workers two times per week in summer. Kistner walked the grassy area once per week, was unaware of any complaints or prior accidents in the area, and had no knowledge of any plans to install a walkway from the Red Barn parking lot to west beach.

As noted, applying appropriate motions standards in order to survive summary judgment on her claim that the grassy area was a dangerous condition on public property, plaintiff had to satisfy all five requirements that permit liability to be imposed on a public entity pursuant to N.J.S.A. 59:4-2. Even

11

applying "the indulgent summary-judgment standard of review," she failed. Polzo II, 209 N.J. at 75.

Although plaintiff's complaint and answers to interrogatories claimed she fell in a "deep hole," plaintiff herself provided no description, except to say a bystander held her head because it was in the hole. Karpinski described it as a "rut[,]" like one caused by a vehicle's tire. The size of the "hole" failed to draw the attention of any police officer who responded.

Assuming arguendo the tire impression, undescribed as to depth, nevertheless could be a dangerous condition, plaintiff still was required to prove the condition was caused by a public employee's negligence or that Allendale had actual or constructive notice of the condition. N.J.S.A. 59:4-3. In her statement of material facts in opposition to defendants' summary judgment motion, plaintiff claimed the hole was a depression made by DPW vehicles or other vehicles operated by Allendale. The only support for this proposition cited in the record is a photograph of the scene on the day of plaintiff's fall. It portrays a field of grass, but it does not demonstrate "deep" depressions in the earth caused by vehicle tires, who made them if they were there, or when. Additionally, there was no evidence demonstrating Allendale was on actual notice of a dangerous declivity through prior observations or complaints.

Nor did plaintiff demonstrate Allendale should be charged with constructive notice of a dangerous condition on its property. The TCA requires that to demonstrate a public entity was on constructive notice, a plaintiff must raise a material factual dispute "that the condition <u>had existed for such a period of time and was of such an obvious nature</u> that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b) (emphasis added). On the motion record, plaintiff failed to do so. Lastly, plaintiff failed to demonstrate Allendale's conduct, visually checking the field once per week, was palpably unreasonable in light of the danger posed.

Plaintiff's alternative argument is that Allendale negligently permitted its employees to direct attendees to an area that required them to traverse the grassy field after parking their cars. It is obvious that if there was no liability for the condition of the field, directing attendees to that area could not be an independent negligent act by a public employee. Moreover, Allendale did not undertake to supervise the activities of individuals using the west beach or their access to the west beach. <u>See</u> N.J.S.A. 59:3-11 ("A public employee is not liable for the failure to provide supervision of public recreational facilities."); <u>see also</u> <u>Burroughs v. City of Atlantic City</u>, 234 N.J. Super. 208, 222 (App. Div. 1989)

(granting summary judgment to municipality pursuant to N.J.S.A. 59:3-11 and rejecting claim that periodic warnings from lifeguards on an otherwise unguarded beach defeated immunity). No further discussion is warranted. R. 2:11-3(e)(1)(E).

Plaintiff also contends that Allendale is liable because the lack of a pedestrian walkway to the west beach was itself a dangerous condition. Plaintiff's expert, Bruce H. Corke, AIA, tendered a report more than two years after plaintiff's fall. He cited provisions of the Uniform Construction Code (UCC) regarding recreational facilities; the cites were to the Barrier Free Subcode portion of the UCC, and generally noted the requirement of an "accessible route of travel" to recreational facilities. Corke also cited standards regarding "walking surfaces," and opined that Allendale "violated applicable standards for safe walkways," and the route plaintiff had to travel to access west beach "was dangerous" and caused her fall.

Amy Wilczynski, an Allendale councilwoman, a member of the borough's facilities, parks and recreation committee and a member of the Club, testified in her deposition about the procedures used by the Club to provide ADA accommodations when requested, including access along matted paths to the west beach. Plaintiff was walking on an area that was part of a public park, used

14

by others who, as already noted, were walking themselves or walking their pets. That plaintiff's ultimate destination was the site of a "recreational activity" hardly makes the field she traversed twice before a dangerous condition on public property.

Because we conclude the judge properly granted Allendale summary judgment pursuant to N.J.S.A. 59:4-2 and N.J.S.A. 59:3-11, we need not consider whether the immunities provided by N.J.S.A. 59:4-8 and the LLA apply to these facts.

III.

We also conclude the judge properly dismissed plaintiff's complaint against ATS on summary judgment. In her initial appellate brief and reply brief, plaintiff focuses solely on the procedural impropriety of the motion judge's decision to grant statutory immunity to ATS. She contends that because ATS never asserted the CIA in its answer and continuously claimed throughout the litigation that it was a "public entity" for purposes of the TCA, ATS either waived CIA immunity or should have been estopped from asserting the defense so late in the game. Plaintiff contends it was a violation of due process for ATS to first raise the issue in its reply brief after she filed her opposition to defendants' summary judgment motion. ATS points to the deposition testimony

15

A-4071-18

of its director which disclosed it was a non-profit 501(c)(3) corporation, and the late amendment to interrogatory answers it served on plaintiff in which ATS provided copies of its governing documents.

We do not necessarily disagree with plaintiff. Having never asserted the defense before, it was unfair for the judge to apply the CIA and grant summary judgment on that ground. Plaintiff was denied the opportunity to further explore or challenge whether, in fact, ATS was immune under the CIA. See e.g., Green v. Monmouth Univ., 237 N.J. 516, 530–31 (2019) (explaining prerequisites for immunity under the CIA).

We affirm summary judgment, however, for reasons other than those expressed by the motion judge. Hayes, 231 N.J. at 387. During oral argument before us, plaintiff claimed that ATS was negligent because as a business invitee, ATS owed her a duty of reasonable care in assuring the premises were safe. We reject this contention.

Assuming plaintiff was an invitee of ATS, it is undisputed that ATS had no control over the premises where plaintiff fell; it was a public park. Moreover, assuming ATS owed plaintiff a duty regarding the condition of an open field that members of the public daily accessed, for all the reasons already stated, ATS did not breach that duty because there was no obvious dangerous condition

or one that should have been discovered upon reasonable inspection. See Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 44 (2012) (explaining duty owed to invitee (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993))).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION