**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0138-23

DEBRA REUTER,

 Plaintiff-Respondent,

v.

BERKELEY TOWNSHIP, its
agents, servants, employees,
CARMEN F. AMATO, JR., TED
MCFADDEN, DEBBI
WINOGRACKI, and JOHN A.
CAMERA,

 Defendants-Appellants.

_____

Argued January 13, 2025 – Decided July 31, 2025

Before Judges Gummer, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2806-18.

Brigit P. Zahler argued the cause for appellants (Dasti & Staiger, PC, attorneys; Christopher A. Khatami and Brigit P. Zahler, of counsel and on the briefs).

William R. Stoltz argued the cause for respondent (Law Offices Rosemarie Arnold, LLP, attorneys; William R. Stoltz and Paige R. Butler, on the brief).

PER CURIAM

Defendants Berkeley Township (the "Township"), Carmen F. Amato, Jr., Ted McFadden, Debbi Winogracki, and John A. Camera appeal the trial court's August 23, 2023 order denying defendants' motion for a new trial pursuant to Rule 4:49-1. Defendants also appeal the trial court's May 26, 2023 order for judgment, which was entered after a jury trial, in favor of plaintiff Debra Reuter's hostile-work-environment and retaliation claims based on disability discrimination pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50. Although plaintiff asserted both disability- and religious-discrimination claims, after an eight-day trial the jury found plaintiff had not proven religious discrimination by a preponderance of the evidence. However, it determined the Township and defendants Amato, Camera, and Winogracki had fostered a hostile work environment because of plaintiff's disability and had retaliated against her in violation of the LAD.[1] The jury awarded her $500,001 in emotional-distress damages, $110,000 in economic-loss damages, and $1,000,002 in punitive damages.

---

[1] The jury did not find defendant McFadden liable for any wrongdoing.

Defendants argue the trial court erred in denying their motion for a new trial on several grounds: (1) plaintiff's trial testimony materially deviated from her pleadings and discovery; (2) the jury's verdict as to hostile-work-environment and retaliation claims based on disability discrimination was against the weight of the evidence; (3) the trial court gave an improper jury charge; (4) the jury's damages award was against the weight of the evidence; and (5) plaintiff's counsel made statements during summation capable of confusing and misleading the jury leading to an unjust result. We note this appeal pertains only to the jury's findings as to disability discrimination and disability retaliation, as neither party appealed the jury's verdict in favor of defendants on plaintiff's religious-discrimination claims or retaliation for plaintiff's complaints based upon religious discrimination.

We conclude the jury's verdict—finding that plaintiff was subjected to a hostile work environment based on disability discrimination and was retaliated against in violation of the LAD—was against the weight of the evidence and resulted in a miscarriage of justice. Therefore, a new trial is warranted. Further, we conclude the jury's damages award is also against the weight of the evidence as set forth in Rule 4:49-1(a) and the trial court's review of that award in denying a new trial conflated evidence relating to religious discrimination, which the

3

jury did not find, with evidence of disability discrimination and constitutes error pursuant to Rule 2:10-2. Finally, the court erred in its review of punitive damages by failing to apply the requisite heightened standard. Accordingly, we vacate the order of judgment, reverse the order denying the motion for a new trial, and remand for a new trial with respect to defendants' potential liability and plaintiff's damages, if any, limited to disability discrimination and retaliation for hiring an attorney, against all defendants except McFadden. No evidence of a hostile work environment based upon religious discrimination may be presented to the jury on remand.

I.

In January 2002, plaintiff began her employment with the Township as an assistant recreation supervisor.[2] By 2016, plaintiff requested a promotion to recreation supervisor, which was granted after the Township's mayor, defendant Amato, intervened in her favor. In November 2015, defendant Camera became the Township's business administrator, and in this role, he oversaw the Township's departments, although he was not plaintiff's direct supervisor. Defendant Winogracki was hired by the Township in July 2016 as a recreation

---

[2] At the time of this appeal, plaintiff remained employed with the Township in the Recreation Department.

A-0138-23

program manager and in February 2018, was promoted to director of recreation for the Township. At that time, she became plaintiff's direct supervisor. Winogracki held this position until she resigned in November 2021.

In addition to her primary role as assistant recreation supervisor, plaintiff coordinated the Municipal Alliance Program ("MAP"), a grant-funded initiative that provided stipends to offset costs of community programs such as senior activities, youth programs, and other local events. She held that position from 2004 to January 2018, earning initially an additional $14,000 annually. Over time, her compensation for this position increased to more than $23,000 annually. The stipend compensating her for this role was disbursed separately by the Township, which was reimbursed by the county. The grant was not guaranteed and required annual application. Plaintiff testified her total annual income, including overtime and MAP compensation, reached approximately $100,000 in one year, but she could not recall the specific year.

Beginning in November 2017, the Township's Chief Financial Officer conducted an audit of the Recreation Department's financial records, including MAP, due to general budgetary concerns and learned seventy percent of the MAP grant monies were used to pay plaintiff's stipend. On January 2, 2018,

5

defendant Camera halted the payment of grant stipends to plaintiff and another employee based on the audit findings.

Plaintiff's claims at trial were comprised of five distinct causes of action. She alleged hostile work environment due to instances of religious discrimination throughout 2017. She also alleged retaliation due to complaints she claimed she had made to her superiors of religious discrimination. Plaintiff retained an attorney sometime in January 2018, who sent a letter on January 25, 2018, to the Township alleging a hostile work environment based on religious discrimination. The letter made no mention of disability discrimination based on her mental health. In February 2018, plaintiff sought leave pursuant to the Family and Medical Leave Act[3] ("FMLA") for anxiety allegedly caused by defendants' religious discrimination and took leave, which lasted approximately twelve weeks.[4] By the time of trial, in addition to claims of hostile work environment for religious discrimination and retaliation based on her complaints of religious discrimination, plaintiff also presented claims of hostile work

---

[3] 29 U.S.C. §§ 2601-2654.

[4] Plaintiff also went on FMLA leave a second time in May 2019, after the filing of her complaint and after the alleged LAD violations.

A-0138-23

environment based on disability discrimination and retaliation for (1) hiring an attorney; and (2) taking FMLA leave.

Prior to trial, defendants moved for summary judgment, which the trial court denied. After plaintiff's case was presented to the jury, defendants moved for a directed verdict pursuant to Rule 4:40-1(a), which the trial court also denied.

At trial, plaintiff testified that when she returned from FMLA leave, defendant Winogracki, who had since become plaintiff's direct supervisor, commandeered plaintiff's office in her absence. Plaintiff further testified that although her job title and salary remained the same, her responsibilities were significantly altered; where she originally had been organizing and supervising various recreational events within the Township, her duties were reduced to folding t-shirts, washing the Township car, and cleaning out office closets, including defendant Winogracki's.[5] Plaintiff noted further that on "[s]everal occasions" defendant Winogracki had "make fun of [her] for being on FMLA,

---

[5] We note these alterations in plaintiff's responsibilities were temporary, as her testimony at the time of trial revealed she is currently "supervis[ing] programs, supervis[ing] the staff, help[ing] run different events and organiz[ing] different events for the [T]ownship." The record shows plaintiff has remained employed by the Township in the same position and salary since the inception of this action.

A-0138-23

that [she] need[s] to be on medications" and had told plaintiff "all [she] was good at was taking FMLA leaves." Plaintiff maintained she had reported this behavior to defendants, but no action was taken. Plaintiff testified at trial that defendants were not aware of her mental-health disability until she took FMLA leave on or around February 15, 2018.

The trial court did not charge the jury on five distinct claims: (1) hostile work environment for religious discrimination; (2) retaliation for complaints of religious discrimination; (3) hostile work environment based upon disability discrimination; (4) retaliation for hiring counsel; and (5) retaliation for taking FMLA leave. Instead, the trial court charged the jury generally with the elements of hostile work environment for discrimination and retaliation.

After an eight-day trial, the jury found plaintiff had not proven by a preponderance of the evidence that defendants had discriminated against her or retaliated against her for religious reasons but found in favor of plaintiff on her claims of a hostile work environment based on disability discrimination and disability retaliation pursuant to the LAD. Plaintiff was awarded $500,001 for emotional distress, $110,000 for economic loss, and $1,000,002 in punitive damages. The jury verdict did not break out damages by each individual defendant.

A-0138-23

Defendants moved for a new trial pursuant to Rule 4:49-1, citing various issues with the jury verdict and trial proceedings. The court denied the motion, finding "[t]he verdict was not against the weight of the evidence" as "[t]here was testimony and evidence to support the verdict." In its decision, the trial court relied on various instances in 2017 that plaintiff claimed showed she had been discriminated against because of her religion and plaintiff's loss of the MAP stipend on January 2, 2018. Defendants filed a notice of appeal and a motion to stay the judgment. The trial court granted the stay pending appeal. Plaintiff did not file a cross-appeal challenging the jury's finding of no cause for religious discrimination or retaliation based on religious complaints pursuant to the LAD.

## II.

A trial court "shall grant" a motion for a new trial "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). "The object is to correct clear error or mistake by the jury," but without "the judge . . . substitut[ing] his judgment for that of the jury merely because he would have reached the opposite conclusion." Dolson v. Anastasia, 55 N.J. 2, 6 (1969); see also R. 4:49-1(a). We do not consider an argument on appeal claiming the jury verdict was against the weight of the

A-0138-23

evidence unless the defendants moved for a new trial on that ground.  R. 2:10-1; Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 462 (2009).

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)); see also R. 2:10-1 ("The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.").  "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'"  Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521).  In our review of the trial court's decision on a motion for a new trial, the trial court "is not entitled to any special deference where it['s decision] rests upon a determination as to the worth, plausibility, consistency or other tangible considerations apparent from the face of the record with respect to which [the trial court] is no more peculiarly situated to decide than the appellate court." Dolson, 55 N.J. at 7.

We conclude the jury's verdict finding plaintiff established, by a preponderance of the evidence, that she had suffered a hostile work environment and retaliation based on her disability is against the weight of the evidence and warrants a new trial for liability and damages because the trial court's analysis was based on a "'manifest lack of inherently credible evidence to support the finding[s]'" and "culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521). We therefore vacate the order of judgment, reverse the order denying defendants' motion for a new trial to prevent a "miscarriage of justice," and remand for a new trial with respect to defendants' liability, if any, focused solely on plaintiff's disability discrimination claims and claims of retaliation based upon hiring counsel. Ibid. (quoting Risko, 206 N.J. at 521).

III.

"Discrimination based on an employee's disability, or perceived disability, is illegal under the LAD." Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 70 (App. Div. 2023). The LAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular

11

employment." N.J.S.A. 10:5-4.1. N.J.A.C. 13:13-1.3 defines "[a] person with a disability" as (1) "[a] person who is perceived as or believed to be a person with a disability, whether or not that individual is actually a person with a disability" as well as (2) "[a] person who has been a person with a disability at any time." In a LAD discrimination claim, the plaintiff bears the burden of establishing a prima facie case. Victor v. State, 203 N.J. 383, 408 (2010).

A. Plaintiff's Hostile Work Environment Claim.

To establish a hostile work environment claim pursuant to the LAD, plaintiff must prove "(1) that [she] is in a protected class; (2) that [she] was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of [her] employment." Id. at 409.

Plaintiff testified she suffered from generalized anxiety disorder, post-traumatic stress disorder, and depression. The record shows she consulted her general practitioner for the first time on November 11, 2017, for these symptoms, which was concurrent with the audit of the MAP program. Our Supreme Court has recognized that "[v]arious mental illnesses and psychological disorders are considered disabilities under the LAD." Players Place II Condo. Ass'n, Inc. v. K.P., 256 N.J. 472, 487 (2024). We have also

12

concluded psychiatric disorders such as depression and post-traumatic stress disorder are disabilities pursuant to the LAD. See, e.g., Domurat v. Ciba Specialty Chems. Corp., 353 N.J. Super. 74, 89 (App. Div. 2002) (recognizing attention deficit disorder, depression, and "other psychiatric disorders" as disabilities pursuant to the LAD); Tynan v. Vicinage 13 of the Super. Ct., 351 N.J. Super. 385, 399 (App. Div. 2002) (concluding post-traumatic stress disorder, depression, and anxiety panic attacks are disabilities).

We conclude the jury's finding of the first prong of a hostile work environment claim was not against the weight of the evidence. See Hayes, 231 N.J. at 386; D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 26-27 (App. Div. 2008).

Regarding the second prong, plaintiff testified defendant Winogracki regularly insulted her for taking FMLA leave upon her return, including saying "all [plaintiff] was good at was taking FMLA leaves," and would make negative comments about her medication use. However, plaintiff testified at trial defendants were not aware of her disability until she took FMLA leave on February 15, 2018. Giving "due regard" to the jury's opportunity to deem plaintiff's testimony credible by rendering a verdict in her favor, Dolson, 55 N.J. at 6 (quoting R. 4:49-1(a)), there exists adequate credible evidence that

13

Winogracki's comments may not have occurred "but for" plaintiff's protected status as a mentally-disabled person, see Leonard v. Metro. Life Ins. Co., 318 N.J. Super. 337, 344-45 (App. Div. 1999) (finding the "but for" prong of a hostile work environment claim based on disability discrimination satisfied because "[i]t [was] clear that [the defendant's] conduct was directed to [the] plaintiff's disability" when "[h]is comments . . . directly referenced [the] plaintiff's diabetes and [the defendant's] perception that [the] plaintiff was looking for special treatment because of that condition").  However, because plaintiff did not demonstrate defendants knew she was suffering from a mental disability until, at the earliest, the January 25, 2018 letter from her attorney, the trial court could not consider any evidence before that date in deciding whether the jury's verdict was against the weight of the evidence in its consideration of defendants' motion for a new trial.

Additionally, although plaintiff offered evidence of defendant Winogracki's conduct, which may not have occurred "but for" plaintiff's "protected status" of her mental disability, plaintiff failed to offer any evidence of such conduct for defendants Amato and Camera, who were both sued individually, in addition to the Township. Victor, 203 N.J. at 409.  The record before the trial court and before us is devoid of any evidence that Amato

14

discriminated against plaintiff because of her disability. At trial, Amato testified he had never "made comments that can be considered derogatory to somebody with a disability to plaintiff," never "receive[d] a complaint from plaintiff regarding her allegation that she was being discriminated against on the basis of a disability," and "never made comments to plaintiff regarding her . . . disability." He also testified that although he had received "numerous complaints from various [T]ownship employees including plaintiff," none of "those complaints raise[d] the issue of disability discrimination." The evidence reflects Amato was unaware of plaintiff's disability until she filed her complaint alleging disability discrimination. Plaintiff conceded on cross-examination she never "told Mayor Amato that [she] thought any action was taken against [her] because of [her] disability."

Similarly, the record is devoid of evidence supporting the jury's verdict that Camera was liable for violating the LAD by creating a hostile work environment. Camera testified plaintiff "never" communicated to him "in any way . . . that she felt she was being discriminated against on the basis of any disability," and he was "never aware that there was a disability until either the initial letter from the attorney or the lawsuit was filed." On cross-examination, he clarified he was unsure if he first became aware of plaintiff's disability when

her attorney sent the January 25, 2018 representation letter, after reviewing her FMLA file, or when she filed her Law Division complaint as he could not remember which of these events occurred first. He also testified none of the religious discrimination complaints he received alleged disability discrimination. Camera conceded on cross-examination he had received a number of emails from plaintiff with the subject line "hostile work environment" but maintained when he spoke with plaintiff about her "issues in the workplace" each issue dealt with religious discrimination; she never "said anything to [him] that made [him] believe [she was] being discriminated against" because of her disability.

Because the jury's verdict finding defendants Amato and Camera individually and personally liable for the hostile work environment based on plaintiff's disability was against the weight of the evidence presented at trial, we decline to address the third prong of her hostile work environment claim and conclude a new trial is necessary to determine any of the defendants' liability. See Hayes, 231 N.J. at 386; D.G., 400 N.J. Super. at 26-27.

Having "given due regard to the opportunity of the jury to pass upon the credibility of the witnesses," we nevertheless conclude the jury's verdict regarding liability "clearly" amounts to a "miscarriage of justice under the law"

16

and warrants a new trial on the issue of hostile work environment for disability discrimination. Dolson, 55 N.J. at 6-7 (quoting R. 4:49-1(a)).

B. Plaintiff's Retaliation Claim.

The LAD forbids "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the LAD] or because that person has sought legal advice regarding rights under [the LAD]." N.J.S.A. 10:5-12(d). The LAD provides a cause of action for individuals who have suffered retaliation in violation of N.J.S.A. 10:5-12(d), and "the elements of the cause of action are that the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (alterations in original) (quoting Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)). In addition to these requirements, the "plaintiff must also demonstrate that the [protected activity] was both reasonable and made in good faith." Ibid.

We have held "there is no bright-line rule defining adverse employment action in the context of a LAD claim." Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 417 (App. Div. 2019), aff'd and modified on other grounds, 246

17

N.J. 507 (2021). Relevant factors include "the employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees" as well as "assignment to different or less desirable tasks." Mancini v. Township of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002), aff'd and modified on other grounds, 179 N.J. 425 (2004); see also Richter, 459 N.J. Super. at 417 ("[R]etaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee." (quoting Marrero v. Camden Cnty. Bd. of Soc. Servs., 164 F. Supp. 2d 455, 473 (D.N.J. 2001))).

In addressing "how harmful an act of retaliatory discrimination must be" to satisfy the LAD's anti-retaliation provision, our Supreme Court adopted the standard used by the United States Supreme Court for addressing Title VII claims, holding "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Roa v. Roa, 200 N.J. 555, 575 (2010) (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 61, 68 (2006)) (internal

quotation marks omitted). Moreover, in "[e]xamining whether a retaliatory motive existed, jurors may infer a causal connection based on the surrounding circumstances." Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000).

Plaintiff claims she was retaliated against because (1) she retained legal counsel to represent her regarding the alleged religious discrimination and hostile work environment and (2) she took FMLA leave. We determine the trial court erred in denying defendants' motion for a new trial because the jury verdict finding defendants Amato and Camera individually and personally liable for retaliation was against the weight of the evidence and because the jury's verdict is unclear as to whether it found defendant Winogracki retaliated against her for hiring an attorney or taking FMLA leave. Hayes, 231 N.J. at 386; D.G., 400 N.J. Super. at 26-27.

Plaintiff's counsel sent a letter to defendants on January 25, 2018, informing defendants of her having "sustained substantial psychological and physical damages as a result of the religious discrimination and hostile work environment she is subjected to." On February 15, 2018, shortly after this letter was sent, plaintiff went on FMLA leave. Upon returning, plaintiff's job responsibilities and duties were significantly altered, and she was relegated to

folding t-shirts, cleaning the Township car, and cleaning office closets rather than her previous responsibilities of organizing Township recreational events.

We conclude evidence in the record supported a finding plaintiff had engaged in a protected activity known to defendants when she retained legal counsel regarding alleged religious discrimination pursuant to the LAD. N.J.S.A. 10:5-12(d). Although the jury did not return a verdict finding religious discrimination, our Supreme Court does not require discrimination be proven to have a cognizable LAD retaliation claim, only "that the original complaint was both reasonable and made in good faith." See Battaglia, 214 N.J. at 547-50 ("We would ill serve those important purposes [of the LAD] were we to demand that one who voices complaints . . . and who suffers retaliation as a consequence, also prove that there is a separate, identifiable victim of actual discrimination.").

We do not, however, agree that taking FMLA leave is a protected activity pursuant to the LAD. In addition to prohibiting retaliation against individuals opposing practices forbidden by the LAD or retaining counsel regarding their LAD rights, the LAD's anti-retaliation provision expressly forbids retaliation in the form of "coerc[ing], indimidat[ing], threaten[ing] or interfere[ing] with any person in the exercise or enjoyment of . . . any right granted or protected by [the LAD]." N.J.S.A. 10:5-12(d). The right to leave guaranteed by the FMLA is not

20

a right "granted or protected by [the LAD]." See ibid. Rather, the FMLA has its own anti-retaliation provision, see 29 U.S.C. § 2614(a), and plaintiff did not seek relief by pleading FMLA retaliation.

We further conclude it was possible for the jury to find plaintiff had suffered an adverse employment decision by having her job duties significantly reduced after defendants were made aware of her retaining legal counsel because such reduction in responsibilities is an outcome that would have dissuaded "a reasonable employee from making or supporting a charge of discrimination." See Roa, 200 N.J. at 575 (quoting Burlington, 548 U.S. at 68) (internal quotation marks omitted). We also conclude the jury was permitted to infer a causal connection between plaintiff's retention of legal counsel and the reduction in her responsibilities because of their close temporal proximity. See Roach, 164 N.J. at 612.

However, we disagree with the trial court's finding that "[t]he verdict was not against the weight of the evidence" as "[t]here was testimony and evidence to support the verdict" because both the testimony and evidence fails to support the jury's finding that Amato and Camera were individually and personally liable for plaintiff's retaliation. The record is devoid of any evidence of Amato's retaliation against plaintiff in violation of the LAD. Plaintiff's testimony

21

referenced Amato when she claimed she was being retaliated against by having her MAP stipend audited and then cancelled, but those actions predate any defendants' awareness of any evidence of plaintiff's disability. She testified: "I felt like I was being retaliated against. And, you know, just all the antisemitic remarks from Debbi[] Winogracki, Tim McFadden, [and] Mayor Amato." This testimony relates solely to plaintiff's allegations of religious discrimination, which the jury failed to find. Plaintiff's alleged protected activity, retaining an attorney, occurred after defendants' audit and cancellation of plaintiff's MAP stipend, not before, and cannot provide the basis for a finding of liability or damages. The record evidence also does not support the jury's finding Camera was liable for retaliation for the same reasons.

We conclude the trial court erred in holding the jury's verdict was not against the weight of the evidence as the record lacks evidence supporting the jury's finding Amato and Camera liable for retaliation, and because the jury verdict is unclear as to whether it found Winogracki retaliated against plaintiff because she hired counsel, a protected activity, or whether Winogracki retaliated against plaintiff for taking FMLA leave, an activity not protected by the LAD. We reverse the trial court's denial of the motion for a new trial and remand for a new trial to determine defendants' liability, if any.

22

C. Damages Award.

"[T]he evaluation of damages is a matter uniquely reposed in the jury's good judgment and to justify judicial interference, the verdict must be wide of the mark and pervaded by a sense of wrongness." Ogborne, 197 N.J. at 463 (quoting Jastram ex rel. Jastram v. Kruse, 197 N.J. 216, 229 (2008)). We conclude the damages awarded were against the weight of the evidence and met that high standard justifying judicial interference. When faced with a motion for a new trial, "[t]he object is to correct clear error or mistake by the jury." Lockley v. Turner, 344 N.J. Super. 1, 13 (App. Div. 2001) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)), aff'd in part and modified in part, 177 N.J. 413 (2003). "This approach 'applies with equal force to awards of emotional distress damages in LAD cases.'" Ibid. (quoting Rendine v. Pantzer, 141 N.J. 292, 312 (1995)).

As a part of plaintiff's award, the jury found defendants owed plaintiff $110,000 in economic loss. However, the record demonstrates plaintiff's MAP stipend, which was the sole basis for plaintiff's alleged economic loss as she was paid the same salary at all times prior to, and after, the actions that support the LAD disability discrimination and retaliation verdicts, was not guaranteed and required annual reapplication. More importantly, plaintiff did not dispute the

23

MAP stipend for plaintiff and another employee was terminated on January 2, 2018, as a result of an internal audit. This was several weeks before defendants were first made aware of plaintiff's retention of legal counsel on January 25, 2018, and over a month before defendants were made aware of plaintiff's mental-health disability when she went on FMLA leave on or about February 15, 2018. Accordingly, it was against the weight of the evidence to award plaintiff these economic damages because they were based on losses she purportedly incurred before defendants knew she was disabled and prior to any alleged wrongdoing by defendants based on her disability. Accordingly, a new trial for damages was warranted and the trial court erred in denying defendants' motion for a new trial.

In addition, we conclude the trial court erred in its failure to review the jury's punitive-damages award against the Township, a public entity, with the necessary heightened review. A trial court is required to apply a heightened standard when it reviews a punitive-damages award against public entities. See Pritchett v. State, 248 N.J. 85, 110 (2021); Lockley v. N.J. Dep't of Corr., 177 N.J. 413, 433 (2003) ("[T]he court's responsibility to review awards of punitive damages for reasonableness is heightened when such damages are awarded against a public entity."). After a jury's award of punitive damages "in the ordinary case," the trial court "acts as a check on the jury's calculation of

24

punitive damages"; however, "in the case of a governmental entity, when public monies are the source of the award, the judge must scrutinize with great care the amount of the award to determine whether it is proportionate to the harm suffered by the plaintiff." Lockley, 177 N.J. at 433. Pursuant to N.J.S.A. 2A:15-5.14(a), a trial court must undergo this review to "ascertain that the award is reasonable in its amount and justified in the circumstances of the case" before it "enter[s] judgment for an award of punitive damages."

Here, the trial court did not apply the heightened standard or review the punitive-damages award on the record after the jury awarded plaintiff $1,000,002 in punitive damages. Nor did the trial court review the punitive-damages award in the May 26, 2023 order which entered the punitive-damages award against the Township. Addressing the punitive-damages award, the order stated only "judgment be and is hereby entered in favor of [p]laintiff, Debra Reuter, against [d]efendant, Berkeley Township, for punitive damages in the amount of $1,000,002." No further analysis, review, or explanation was provided. In its consideration of the punitive-damages award entered against the Township, the trial court failed to recognize "that public funds were at stake" and failed to act with the "special responsibility" imposed by our Supreme Court "to review for reasonableness an award of publicly funded monies for punitive

purposes." Pritchett, 248 N.J. at 110; see also Lockley, 177 N.J. at 432-33; Green v. Jersey City Bd. of Educ., 177 N.J. 434, 444 (2003) ("We trust that our courts will be vigilant in their review of [punitive-damages] awards [against public entities] . . . .").

The trial court also erred in its analysis of the validity of the jury's emotional and punitive-damages awards in its consideration of the motion for a new trial. The trial court's opinion incorrectly conflates plaintiff's religious-discrimination claims with disability-discrimination claims: "while the [j]ury may not have found in favor of religious discrimination, that does not mean that comments/issues related to religious discrimination are irrelevant insofar as they relate to causation of [p]laintiff's psychiatric (and therefore disability) issues." The court then went on to discuss various incidents in 2017, all pre-dating defendants' knowledge of plaintiff's mental-health condition or the attorney letter that provided the basis for her retaliation claim, to support the emotional-distress and punitive-damages awards. Plaintiff cannot be awarded for losses based on religious discrimination, a claim she did not prevail upon, and it was improper for the trial court to rely upon such allegations "insofar as they relate to the causation of [p]laintiff's psychiatric . . . issues" as such error is "clearly

capable of producing an unjust result" in plaintiff's awarded damages. R. 2:10-2.

We vacate the order of judgment awarding plaintiff damages, reverse the order denying defendants' motion for a new trial, and remand for a new trial to consider the economic, emotional, and punitive damages, if any, exclusively within the context of plaintiff's claims of hostile work environment based on disability discrimination and retaliation for hiring an attorney, a protected act pursuant to the LAD. If the jury awards punitive damages against the Township after the new trial, we instruct the trial court to review the punitive-damages award pursuant to the necessary heightened standard. Pritchett, 248 N.J. at 111 ("[W]e instruct the trial court on remand, and all trial courts reviewing a punitive damages award issued by a jury against a public entity defendant, to review the award under the heightened scrutiny required in Lockley and explicated in Green.").

To the extent we have not addressed any of defendants' remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

In sum, the order denying a motion for a new trial is reversed and the order of judgment setting forth the liability and damages awards are vacated except

with respect to the jury's findings regarding plaintiff's failure to prove religious discrimination against any defendant, failure to prove retaliation based on complaints of religious discrimination against any defendant, and any liability against defendant McFadden. The matter is remanded for proceedings consistent with this opinion.

Reversed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

28

A-0138-23